Gurpreet Kaur, Esq.
Kaur Legal Group, PC
674 County Square Dr, Suite 305
Ventura, CA 93003
Ph. 805-300-9003; Cell 909-997-4570
Fax: 805-716-6100
E-mail: gurpreetkauresq@gmail.com
*Attorney for Petitioner*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSE MARTIN HERNANDEZ CASTANON<br><br>Petitioner,<br>v.<br>MARK BOWEN, Acting-Warden of the Adelanto Detention Center, DAVID J. VENTURELLA, Acting Director of Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States<br><br>Respondents. | Civil Action No.<br><br>**VERIFIED PETITION FOR HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner Jose Martin Hernandez Castanon respectfully petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2241 challenging his continued detention by U.S. Immigration and Customs Enforcement ("ICE") and seeking his immediate release from immigration custody. Petitioner has resided in the United States for more than three decades, has maintained a longstanding residence in Long Beach, California, has substantial family and community ties, and has maintained steady employment. Most significantly, the November 28, 2000 in absentia removal order that preceded Petitioner's detention has now been rescinded, his removal proceedings have been reopened, and

Petitioner is presently scheduled to appear before the Los Angeles Immigration Court for a master calendar hearing on September 18, 2026.

2. Petitioner entered the United States in approximately 1993. He was not apprehended by immigration authorities at the time of his entry. He thereafter established his life in Southern California and has resided at 2912 E. Cade Street, Unit A, Long Beach, California, for more than three decades.

3. In 2000, unbeknownst to Petitioner, a Form I-589, Application for Asylum and for Withholding of Removal, was submitted in his name by a non-attorney from whom Petitioner had sought general immigration assistance. Petitioner maintains that he did not complete, review, sign, approve, or authorize that application. The application contained an address that was not Petitioner's residence, and immigration notices associated with that application were subsequently mailed to that address rather than Petitioner's actual residence.

4. Petitioner therefore did not receive the asylum interview notice, Notice to Appear, or notice of his Immigration Court hearing. On November 28, 2000, an Immigration Judge entered an in absentia removal order when Petitioner failed to appear at a hearing of which he had no knowledge.

5. For more than two decades thereafter, Petitioner continued living openly at his longstanding Long Beach residence, working, supporting his family, and paying federal income taxes. Petitioner was not subject to ICE reporting requirements or regular ICE check-ins during this period and had not been reporting to ICE before the events giving rise to his present detention.

6. On or about June 16, 2026, Petitioner received a notice or letter from immigration authorities directing him to appear at an immigration office to complete paperwork. This was the first such notice Petitioner had received. Petitioner had not previously received documents directing him to report to ICE and had never been subject to regular ICE check-ins.

7. Petitioner did exactly what the Government directed him to do. Rather than ignore the

notice, evade immigration authorities, or abscond, Petitioner voluntarily appeared as instructed. His compliance is particularly significant because Petitioner had lived at the same longstanding residence for decades and, when immigration authorities affirmatively contacted him, he presented himself as directed.

8. On June 30, 2026, Petitioner appeared for the appointment in compliance with the Government's instructions. Petitioner had no reason to believe that appearing to complete paperwork would result in his detention and made no effort to avoid the appointment. Upon his appearance, however, ICE officers took Petitioner into immigration custody.

9. Petitioner's voluntary appearance on June 30, 2026 is powerful evidence of his willingness to comply with immigration proceedings. He did not abscond when contacted by immigration authorities. He did not ignore the Government's direction to appear. Instead, after living openly in the community for more than three decades, he appeared when instructed and was detained at the very appointment he voluntarily attended.

10. While detained and facing removal pursuant to the decades-old in absentia order, Petitioner acted promptly through counsel. On July 6, 2026, Petitioner filed a Motion to Reopen Removal Proceedings and to Rescind the In Absentia Removal Order Based on Lack of Notice with the Los Angeles Immigration Court.

11. Petitioner's Motion explained that his failure to appear in 2000 was not deliberate or an attempt to evade immigration proceedings. Rather, the notices had been sent to an address derived from an asylum application Petitioner maintains he never reviewed, signed, or authorized and to an address at which he had never resided. The Motion was supported by Petitioner's declaration and substantial documentary evidence demonstrating his longstanding residence at his actual Long Beach address.

12. On September 14, 2026, the Immigration Judge GRANTED Petitioner's Motion to

Reopen and rescinded the November 28, 2000 in absentia removal order. Petitioner's removal proceedings are therefore once again active before the Immigration Court.

13. The consequences of that ruling are substantial. Petitioner is no longer subject to the November 28, 2000 in absentia removal order that existed when ICE detained him on June 30, 2026. That order has been rescinded. Petitioner now has pending removal proceedings and is scheduled for a master calendar hearing before the Immigration Court on September 18, 2026.

14. Yet despite the rescission of the removal order and restoration of Petitioner's proceedings to the active Immigration Court calendar, Respondents continue to hold Petitioner in physical custody. His detention therefore continues even though the final removal order that existed at the time of his arrest has been vacated and the Immigration Court has restored his case to pending proceedings.

15. Petitioner's conduct demonstrates that physical detention is unnecessary to secure his participation in those proceedings. When immigration authorities contacted him in June 2026 and instructed him to appear, Petitioner complied. His voluntary appearance resulted in his detention. There is therefore no factual basis to infer from the decades-old in absentia order that Petitioner intends to evade the Immigration Court, particularly where that very order has now been rescinded based upon reopening of the proceedings.

16. Petitioner also has powerful incentives to continue appearing. He has lived in the United States for more than three decades, maintains a fixed residence in Long Beach, has longstanding employment, substantial family and community ties, and an active immigration case in which he intends to pursue all relief for which he is eligible. His next Immigration Court hearing is already scheduled for September 18, 2026.

17. Petitioner does not ask this Court to terminate his removal proceedings, adjudicate his

eligibility for immigration relief, or interfere with the Immigration Judge's consideration of his reopened case. He asks this Court to address the legality of his continued physical detention now that the in absentia removal order has been rescinded and his case has returned to active proceedings.

18. Under these circumstances, Petitioner's continued physical detention is unlawful. Petitioner therefore seeks a writ of habeas corpus directing his immediate release from immigration custody, subject to reasonable conditions of supervision if necessary. Petitioner does not seek a remand for a custody redetermination or a post-deprivation bond hearing; he seeks habeas relief from his present unlawful physical confinement.

## **JURISDICTION**

19. This action arises under the Constitution of the United States and the INA, 8 U.S.C. § 1101 *et seq.*

20. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

21. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## **VENUE**

22. Venue is proper because Petitioner is detained in Adelanto Detention Center, which is within the jurisdiction of this District. Venue is also proper in this District because Respondents are officers, employees, or agencies of the United States. *See* 28 U.S.C. § 1391(e).

## **PARTIES**

23. Respondent Tonya Andrews is sued in her official capacity as Warden of the Adelanto Detention Center. Respondent Andrews is the physical custodian of Petitioner.

24. Respondent Todd Lyons is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. Respondent Lyons is a legal custodian of Petitioner and has authority to release him.

25. Respondent Markwayne Mullin is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security. In this capacity, Respondent Mullin is responsible for the implementation and enforcement of the INA, and oversees ICE, the component agency responsible for Petitioner's detention and custody. Respondent Mullin is a legal custodian of Petitioner.

26. Respondent Todd Blanche is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice. In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the BIA. Respondent Blanche is a legal custodian of Petitioner.

## STATEMENT OF FACTS

27. Petitioner Jose Martin Hernandez Castanon is a native and citizen of Mexico.

28. Petitioner entered the United States in approximately 1993.

29. Petitioner was not apprehended by immigration authorities at the time of his entry into the United States.

30. Since approximately 1993, Petitioner has maintained his residence at 2912 E. Cade Street, Unit A, Long Beach, California.

31. Petitioner's longstanding residence at that address is corroborated by documentary records spanning decades, including federal income tax records, employment records, utility records, medical records, and personal correspondence.

32. In or around 2000, Petitioner sought general immigration assistance from a non-attorney

because he did not understand the immigration process.

33. Petitioner does not read or write English and relied upon others to explain immigration documents and procedures to him.

34. On or about May 9, 2000, a Form I-589, Application for Asylum and for Withholding of Removal, was submitted in Petitioner's name.

35. Petitioner did not knowingly complete, review, sign, approve, or authorize the filing of that Form I-589.

36. Petitioner has never resided at the address appearing on the Form I-589, never adopted that address as his mailing address, and never authorized anyone to use that address to receive immigration correspondence on his behalf.

37. The signatures appearing on the Form I-589 are not Petitioner's signatures. Petitioner prints his signature and does not write in cursive, whereas the purported signatures appearing on the application are written in cursive.

38. An asylum interview notice was subsequently issued in connection with the Form I-589.

39. Petitioner did not receive the asylum interview notice and did not know that an asylum application had been filed in his name.

40. Immigration authorities subsequently initiated removal proceedings against Petitioner and mailed notices to the address derived from the Form I-589.

41. Petitioner did not receive the Notice to Appear or notice of his Immigration Court hearing.

42. Because Petitioner did not receive those notices, he did not know that removal proceedings had been initiated or that he was required to appear before the Immigration Court.

43. On November 28, 2000, an Immigration Judge entered an in-absentia removal order

against Petitioner.

44. Petitioner's failure to appear was not deliberate. Petitioner did not appear because he did not receive notice and did not know that a hearing had been scheduled.

45. For more than two decades following entry of the in-absentia order, Petitioner remained unaware of the proceedings and continued living openly at his longstanding Long Beach residence.

46. During that period, Petitioner maintained employment, supported his family, paid federal income taxes, and established substantial family and community ties in Southern California.

47. Petitioner has been employed as an Iron Molder with Angelus Aluminum Foundry Co., Inc. for approximately eight years.

48. Prior to June 2026, Petitioner was not subject to regular ICE reporting requirements and had never been participating in routine ICE check-ins.

49. On or about June 16, 2026, Petitioner received a notice or letter from immigration authorities directing him to appear to complete paperwork.

50. Petitioner had not previously received other documents directing him to report to ICE.

51. Petitioner did not ignore the June 16, 2026 notice. Instead, he complied with the Government's instructions and appeared as directed.

52. On June 30, 2026, Petitioner voluntarily appeared for the immigration appointment.

53. Petitioner appeared because immigration authorities had instructed him to do so and because he intended to comply with the Government's request.

54. Petitioner did not attempt to abscond, conceal his whereabouts, or evade immigration authorities after receiving the notice.

55. Upon Petitioner's appearance on June 30, 2026, ICE officers took him into immigration custody.

56. Petitioner has remained in immigration detention since June 30, 2026.

57. At the time ICE detained Petitioner, the November 28, 2000 in absentia removal order remained administratively outstanding.

58. While detained and facing removal pursuant to that order, Petitioner promptly sought legal relief from the Immigration Court.

59. On July 6, 2026, Petitioner filed a Motion to Reopen Removal Proceedings and to Rescind the In Absentia Removal Order Based on Lack of Notice.

60. Petitioner's Motion asserted that he had never received notice of the underlying removal proceedings because immigration notices were mailed to an address that Petitioner had never provided, used, or authorized as his residence or mailing address.

61. Petitioner's Motion was supported by evidence of his longstanding residence at 2912 E. Cade Street, Unit A, Long Beach, California, as well as evidence concerning the Form I-589 that had been submitted in his name.

62. Petitioner remained detained while the Immigration Judge considered his Motion to Reopen.

63. On September 14, 2026, the Immigration Judge GRANTED Petitioner's Motion to Reopen and rescinded the November 28, 2000 in absentia removal order.

64. As a result of the Immigration Judge's September 14, 2026 ruling, Petitioner's removal proceedings have been reopened and restored to the active Immigration Court calendar.

65. The November 28, 2000 in absentia removal order that existed when Petitioner was taken into custody is no longer operative.

66. Petitioner is presently scheduled to appear for a master calendar hearing on September 18, 2026.

67. Petitioner intends to appear and participate fully in his reopened removal proceedings and to pursue all relief for which he is eligible.

68. Petitioner's conduct when immigration authorities contacted him in June 2026 demonstrates his willingness to comply with those proceedings. After receiving the June 16, 2026 notice, Petitioner voluntarily appeared as directed on June 30, 2026, notwithstanding that he had never previously been subject to regular ICE check-ins.

69. Petitioner's voluntary appearance resulted in his detention. He did not have to be located or apprehended after failing to report; he presented himself to immigration authorities in compliance with their instructions.

70. Petitioner has a longstanding fixed residence in Long Beach to which he can immediately return if released.

71. Petitioner has maintained stable employment and possesses substantial family and community ties in Southern California.

72. Petitioner's reopened proceedings provide him with a substantial incentive to continue appearing before the Immigration Court and complying with lawful immigration requirements.

73. Despite the Immigration Judge's rescission of the November 28, 2000 in absentia removal order and restoration of Petitioner's case to the active calendar, Respondents continue to physically detain Petitioner.

74. Petitioner does not seek through this Petition termination of his removal proceedings or an order directing the Immigration Judge to grant any particular form of immigration relief.

75. Petitioner challenges his continued physical detention and seeks restoration of his liberty while his reopened removal proceedings are adjudicated.

76. Under these circumstances, Petitioner's continued physical detention is unlawful.

Petitioner therefore seeks a writ of habeas corpus directing his immediate release from immigration custody, subject to reasonable conditions of supervision if necessary. Petitioner does not seek a remand for a custody redetermination or a post-deprivation bond hearing; he seeks habeas relief from his present unlawful physical confinement

## STATUTORY FRAMEWORK

77. The INA prescribes three basic forms of detention for noncitizens in removal proceedings. First, 8 U.S.C. § 1226(a) authorizes the detention of noncitizens in standard non-expedited removal proceedings before an IJ. *See* 8 U.S.C. § 1226(a); 8 U.S.C. § 1229a. Individuals in section 1226(a) detention are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

78. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under 8 U.S.C. § 1225(b)(2).

79. Finally, the INA also provides for detention of noncitizens who are subject to final orders of removal, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b). The detention provisions at section 1226(a) and 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(c) was most recently amended earlier this year by the Laken Riley Act ("LRA"), Pub. L. No. 119-1, 139 Stat. 3 (2025).

80. Following enactment of the IIRIRA, the EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under

section 1225 and that they were instead detained under section 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In the decades that followed, most noncitizens who entered without inspection—unless they were subject to some other detention authority—received bond hearings. This practice was also consistent with the practice prior to the enactment of the IIRIRA, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that section 1226(a) simply "restates" the detention authority previously found at section 1252(a)).

81. On July 8, 2025, DHS issued a memo to all employees of ICE stating that "[t]his message serves as notice that DHS, in coordination with the Department of Justice (DOJ), has revisited its legal position on detention and release authorities. DHS has determined that section 235 of the Immigration and Nationality Act (INA) [8 U.S.C. § 1225], rather than section 236 [8 U.S.C. § 1226], is the applicable immigration detention authority for all applicants for admission. The following interim guidance is intended to ensure immediate and consistent application of the Department's legal interpretation while additional operational guidance is developed." The memo further stated DHS' new position with regard to custody determinations as follows:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1) [8 U.S.C. § 1225(a)(1)]. **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) [8 U.S.C. § 1225(b)] and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated. **The only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) [8 U.S.C. § 1226(a)] during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention**

> **under INA § 236(c) [8 U.S.C. § 1226(c)]**.
>
> Moving forward, ICE will not issue Form I-286, Notice of Custody Determination, to applicants for admission because Form I-286 applies by its terms only to custody determinations under INA § 236 and part 236 of Title 8 of the Code of Federal Regulations. With a limited exception for certain habeas petitioners, on which the Office of the Principal Legal Advisor (OPLA) will individually advise, if Enforcement and Removal Operations (ERO) previously conducted a custody determination for an applicant for admission still detained in ICE custody, ERO will affirmatively cancel the Form I-286. *See* https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last accessed October 18, 2025) (emphasis original).

82. As a result, DHS now considers all noncitizens who have entered the United States without inspection and are subject to the grounds of inadmissibility, including long-time U.S. residents, to be subject to mandatory detention under section 1225(b) and ineligible for release on bond. Conversely, according to DHS "[t]he only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) [8 U.S.C. § 1226(a)] during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c) [8 U.S.C. § 1226(c)]." *Id.*

83. Shortly thereafter, the Board of Immigration Appeals ("BIA") issued decisions reflecting the same interpretation. In Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025) and Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), the Board concluded that Immigration Judges lack bond authority over certain noncitizens present in the United States without admission because, in the Board's view, § 1225(b)(2)(A) mandates detention of such "applicants for admission" during removal proceedings.

84. The Ninth Circuit has since confirmed that DHS's detention authority must derive from the statute enacted by Congress and may not be expanded through administrative interpretation. See Rodriguez Vazquez v. Bostock, 3: 25-cv-05240 (9th Cir. July 30, 2026). Rodriguez Vazquez reinforces

that mandatory detention provisions must be applied according to their statutory terms and that DHS may not invoke mandatory detention where Congress has not authorized it.

85. Petitioner Jose Martin Hernandez Castanon entered the United States in approximately 1993. Petitioner was not apprehended by immigration authorities at the time of his entry and was not placed into immigration custody at or near the border. He thereafter established his life in Southern California and has maintained a longstanding residence at 2912 E. Cade Street, Unit A, Long Beach, California, where he has resided for more than three decades.

86. In 2000, unbeknownst to Petitioner, a Form I-589, Application for Asylum and for Withholding of Removal, was submitted in his name by a non-attorney from whom Petitioner had sought general immigration assistance. Petitioner did not knowingly complete, review, sign, approve, or authorize that application. The application contained an address that was not Petitioner's residence and that Petitioner had never provided, used, or authorized as an address for immigration correspondence.

87. Immigration notices associated with that filing were subsequently mailed to the address appearing on the Form I-589 rather than Petitioner's actual residence. Petitioner did not receive the asylum interview notice, Notice to Appear, or notice of his Immigration Court hearing. Consequently, on November 28, 2000, an Immigration Judge entered an in absentia removal order when Petitioner failed to appear at a hearing of which he had no actual knowledge.

88. For more than two decades thereafter, Petitioner continued to live openly at his longstanding Long Beach residence. He maintained steady employment, supported his family, paid federal income taxes, and developed substantial family and community ties in Southern California. During this period, Petitioner was not participating in regular ICE check-ins and had not been directed to report periodically to ICE.

89. Petitioner eventually learned of the prior immigration proceedings after affirmatively attempting to regularize his immigration status. After discovering the existence of the in absentia removal order, Petitioner sought legal assistance and investigated the circumstances surrounding the prior proceedings.

90. On or about June 16, 2026, Petitioner received a notice or letter from immigration authorities directing him to appear to complete paperwork. Petitioner had not previously been subject to regular ICE reporting and had not received prior notices directing him to appear for periodic ICE check-ins.

91. Petitioner did not ignore the Government's direction to appear. He did not conceal himself, change his residence, or attempt to evade immigration authorities. Instead, after receiving the June 16, 2026 notice, Petitioner voluntarily complied with the Government's instructions and appeared as directed.

92. On June 30, 2026, Petitioner appeared for the immigration appointment. His voluntary appearance is itself significant evidence of his willingness to comply with immigration authorities: after residing in the United States for more than three decades, Petitioner appeared when the Government instructed him to do so rather than absconding or attempting to evade immigration proceedings.

93. Upon Petitioner's appearance on June 30, 2026, ICE officers took him into immigration custody. Petitioner has remained detained since that date.

94. At the time ICE detained Petitioner, the November 28, 2000 in absentia removal order remained administratively outstanding. That order supplied the procedural posture under which ICE sought to remove Petitioner from the United States.

95. Petitioner promptly challenged that order. On July 6, 2026, while detained and facing removal, Petitioner filed a Motion to Reopen Removal Proceedings and to Rescind the In Absentia

Removal Order Based on Lack of Notice with the Los Angeles Immigration Court.

96. Petitioner's Motion explained that his failure to appear in 2000 was not deliberate and did not reflect an effort to evade immigration proceedings. Rather, Petitioner maintained that he had never received notice because the relevant immigration documents were sent to an address appearing on an asylum application that he had never knowingly reviewed, signed, or authorized.

97. Petitioner supported his Motion with substantial evidence concerning his actual residence, the unauthorized Form I-589, the signatures appearing on that application, and the circumstances surrounding his lack of notice of the 2000 proceedings.

98. On September 14, 2026, the Immigration Judge GRANTED Petitioner's Motion to Reopen and rescinded the November 28, 2000 in absentia removal order.

99. The legal and factual circumstances underlying Petitioner's continued detention have therefore materially changed. The November 28, 2000 in absentia removal order that remained outstanding when ICE detained Petitioner on June 30, 2026 has now been rescinded, and Petitioner's removal proceedings have been reopened and returned to the active Immigration Court calendar.

100. Petitioner is presently scheduled for a master calendar hearing on September 18, 2026. He intends to appear, participate fully in his reopened proceedings, and pursue all forms of relief for which he is eligible.

101. Despite the Immigration Judge's September 14, 2026 order rescinding the in absentia removal order and reopening Petitioner's proceedings, Respondents continue to hold Petitioner in physical custody.

102. Petitioner's conduct demonstrates that physical confinement is unnecessary to secure his participation in those proceedings. When immigration authorities contacted Petitioner and instructed him to appear in June 2026, Petitioner complied. He did not abscond or attempt to evade ICE. Rather,

he voluntarily presented himself at the appointment on June 30, 2026, and his compliance with the Government's instruction is precisely what resulted in his detention.

103. Petitioner's willingness to comply is further demonstrated by his longstanding fixed residence, more than three decades of residence in the United States, stable employment, extensive family and community ties, and active pursuit of relief before the Immigration Court.

104. The rescission of the in absentia order is particularly significant to any assessment of Petitioner's risk of nonappearance. The decades-old failure to appear cannot fairly be treated, standing alone, as evidence that Petitioner presently intends to evade immigration proceedings where the Immigration Judge has now reopened those proceedings and rescinded the resulting in absentia removal order.

105. Moreover, Petitioner's actual conduct in 2026 provides direct evidence of his willingness to appear. After immigration authorities affirmatively contacted him, Petitioner voluntarily reported as instructed. He was not apprehended after failing to report, was not located after absconding, and did not attempt to conceal himself from immigration authorities.

106. Petitioner's reopened proceedings also provide him with a powerful incentive to continue appearing. He has an active case before the Immigration Court, a master calendar hearing scheduled for September 18, 2026, and intends to pursue all relief for which he may be eligible.

107. Respondents nevertheless continue to deprive Petitioner of his physical liberty without an individualized determination establishing that his continued confinement is necessary to prevent flight or protect the community.

108. Freedom from physical restraint lies at the core of the liberty protected by the Due Process Clause. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Civil immigration detention therefore must remain reasonably related to its permissible purposes and must comport with the

requirements of due process.

109. Due process requires procedures appropriate to the nature and circumstances of the deprivation. *See Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976). Here, Petitioner's circumstances have materially changed since ICE took him into custody: the final in absentia removal order then outstanding has been rescinded, his proceedings have been reopened, and he now has an active hearing before the Immigration Court.

110. Continued detention cannot rest merely upon the historical existence of an in absentia removal order that has now been rescinded. Any present justification for Petitioner's physical confinement must account for his current procedural posture and his individualized circumstances, including his voluntary compliance with ICE's June 2026 reporting instruction, longstanding fixed residence, employment, family ties, and active reopened immigration proceedings.

111. Petitioner does not ask this Court to adjudicate his removability, determine his eligibility for adjustment of status or other immigration relief, or interfere with the Immigration Judge's adjudication of his reopened proceedings. Those matters remain properly before the Immigration Court.

112. Petitioner instead challenges his continued physical detention and seeks restoration of his liberty while those reopened proceedings are adjudicated.

113. Petitioner's voluntary appearance on June 30, 2026 distinguishes this case from one involving a noncitizen who ignored immigration authorities or attempted to evade enforcement. When the Government directed Petitioner to appear, he appeared. His compliance should not now be transformed into a basis for indefinite physical confinement after the removal order that existed at the time of his detention has been rescinded.

114. Accordingly, Petitioner respectfully seeks a writ of habeas corpus directing his immediate release from immigration custody, subject to reasonable conditions of supervision if the

Court deems appropriate.

**CLAIMS FOR RELIEF**

**COUNT ONE**

**Violation of Petitioner's Procedural Due Process Rights**

115. The allegations in the above paragraphs are realleged and incorporated herein.

116. The Fifth Amendment prohibits the government from depriving a person of liberty without due process of law

117. Under Mathews v. Eldridge, 424 U.S. 319 (1976), courts evaluate procedural due process claims by considering: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the value of additional safeguards; and (3) the governmental interests at stake.

118. The private interest at stake here—freedom from physical detention—is among the most fundamental liberty interests protected by the Constitution.

119. Petitioner has resided in the United States for more than three decades. He was not apprehended by immigration authorities at the time of his entry and thereafter established a longstanding residence, employment, family ties, and community ties in Southern California.

120. On June 16, 2026, Petitioner received a notice or letter from immigration authorities directing him to appear to complete paperwork. Prior to that notice, Petitioner had not been participating in regular ICE check-ins and had not been subject to ongoing ICE reporting requirements.

121. Petitioner complied with the Government's instruction. On June 30, 2026, he voluntarily appeared as directed rather than ignoring the notice, concealing his whereabouts, or attempting to evade immigration authorities.

122. Upon Petitioner's voluntary appearance, ICE took him into physical custody. At that time, a November 28, 2000 in absentia removal order remained administratively outstanding.

123. Petitioner promptly challenged that order. On July 6, 2026, Petitioner filed a Motion to Reopen Removal Proceedings and to Rescind the In Absentia Removal Order Based on Lack of Notice.

124. On September 14, 2026, the Immigration Judge granted Petitioner's Motion to Reopen and rescinded the November 28, 2000 in absentia removal order.

125. The procedural and legal circumstances underlying Petitioner's detention therefore materially changed. The final removal order that existed when ICE took Petitioner into custody has been rescinded, and Petitioner's removal proceedings have been reopened and restored to the Immigration

Court's active calendar.

126. Petitioner is presently scheduled for a master calendar hearing on September 18, 2026 and intends to appear and fully participate in those proceedings.

127. Respondents nevertheless continue to physically detain Petitioner without providing an individualized determination, adequate to Petitioner's present procedural posture, establishing that continued confinement is necessary.

128. The risk of erroneous deprivation is substantial because continued detention imposes the most severe restraint upon Petitioner's physical liberty despite the rescission of the in absentia removal order and without meaningful consideration of Petitioner's current individualized circumstances.

129. Those circumstances include Petitioner's voluntary compliance with ICE's June 2026 reporting instruction, his more than three decades of residence in the United States, his longstanding fixed residence, stable employment, substantial family and community ties, and active reopened immigration proceedings.

130. Petitioner's conduct provides direct evidence of his willingness to appear. When immigration authorities instructed him to report, Petitioner voluntarily appeared. He was not apprehended after failing to report, located after absconding, or arrested after attempting to conceal himself from immigration authorities.

131. Petitioner's June 30, 2026 appearance—the very event that resulted in his detention—therefore substantially undermines any inference that physical confinement is necessary merely to secure his future appearance.

132. The risk of erroneous deprivation is particularly acute because Respondents continue to impose the most severe restraint on Petitioner's liberty notwithstanding the material change in his legal posture and without demonstrating that his continued physical confinement is necessary in light of his present individualized circumstances.

133. The Government undoubtedly possesses legitimate interests in ensuring Petitioner's appearance at immigration proceedings and protecting the community. But those interests do not justify Petitioner's continued physical confinement where the final removal order underlying his detention has been rescinded and Petitioner's actual conduct—including his voluntary appearance when directed by ICE—demonstrates his willingness to comply with immigration proceedings.

134. Petitioner does not seek adjudication by this Court of his removability or entitlement to immigration relief. He seeks constitutionally adequate process concerning the distinct deprivation of his

physical liberty.

135. Respondents' continued detention of Petitioner without constitutionally adequate individualized process violates the Due Process Clause of the Fifth Amendment.

136. A post-deprivation custody proceeding would not itself remedy the period of continued unconstitutional confinement challenged here. Petitioner does not merely seek recognition that he is statutorily eligible to request release; he challenges Respondents' continued physical confinement after the legal basis and circumstances underlying that confinement materially changed.

137. Habeas corpus is directed to unlawful physical custody. Under the extraordinary circumstances presented here, the appropriate remedy is termination of that unlawful custody through immediate release, not continuation of the challenged confinement while Petitioner pursues another administrative proceeding to obtain the liberty that the Constitution and governing statute already protect.

**COUNT TWO**

**Violation of Fifth Amendment Right to Substantive Due Process**

138. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

139. The Fifth Amendment provides that no person shall be deprived of liberty without due process of law. U.S. Const. amend. V. Freedom from physical restraint lies at the core of the liberty protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

140. Civil immigration detention is nonpunitive and must remain reasonably related to a legitimate governmental purpose.

141. Petitioner has resided in the United States for more than three decades and was not apprehended by immigration authorities at the time of his entry.

142. When immigration authorities directed Petitioner to appear in June 2026, Petitioner voluntarily complied. He appeared as instructed on June 30, 2026 and was taken into ICE custody.

143. At the time of Petitioner's detention, the November 28, 2000 in absentia removal order remained outstanding.

144. Petitioner promptly sought reopening and rescission of that order based upon lack of notice.

145. On September 14, 2026, the Immigration Judge granted Petitioner's Motion to Reopen, rescinded the November 28, 2000 in absentia removal order, and returned Petitioner's removal proceedings to the active Immigration Court calendar.

146. The final removal order that existed when ICE took Petitioner into custody therefore no

longer remains operative.

147. Petitioner's current detention must consequently be evaluated in light of his present procedural posture and the legitimate civil purposes that detention is intended to serve.

148. Petitioner presents substantial evidence that physical confinement is unnecessary to ensure his appearance. He voluntarily reported when immigration authorities directed him to do so, maintains a longstanding fixed residence, has stable employment, possesses substantial family and community ties, and has an active immigration case in which he intends to pursue relief.

149. Petitioner's next master calendar hearing is scheduled for September 18, 2026, providing him an immediate and concrete opportunity to demonstrate his continued compliance with the Immigration Court.

150. Respondents continue to physically confine Petitioner despite the rescission of the in absentia removal order and without identifying an individualized factual basis demonstrating that his continued detention is necessary to address a present danger to the community or risk of flight.

151. Petitioner's historical failure to appear in 2000 cannot, without consideration of the circumstances surrounding that proceeding and his current circumstances, establish an individualized need for detention where the resulting in absentia order has now been rescinded and the proceedings reopened.

152. Petitioner's actual conduct in 2026 points in the opposite direction. When immigration authorities affirmatively contacted him, he complied and voluntarily appeared.

153. The Government possesses legitimate interests in ensuring appearance at immigration proceedings and protecting the community. But continued civil confinement must remain reasonably related to those purposes rather than operate as detention untethered from an individualized need for physical custody.

154. Under the circumstances presented here, Petitioner's continued confinement following rescission of the in absentia removal order, without an individualized determination establishing a present necessity for detention, constitutes an arbitrary deprivation of physical liberty.

155. Petitioner's continued detention therefore violates the substantive component of the Fifth Amendment's Due Process Clause.

156. Accordingly, Petitioner seeks immediate release from physical custody, subject to reasonable conditions of supervision if appropriate.

**COUNT THREE**

**Violation of the Immigration and Nationality Act**

157. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

158. Petitioner entered the United States in approximately 1993 and was not apprehended by immigration authorities at the time of his entry.

159. Petitioner thereafter resided in the interior of the United States for more than three decades before ICE took him into custody on June 30, 2026.

160. At the time of Petitioner's June 30, 2026 detention, a November 28, 2000 in absentia removal order remained outstanding.

161. On September 14, 2026, the Immigration Judge granted Petitioner's Motion to Reopen and rescinded that in absentia removal order.

162. Petitioner's proceedings are now reopened and pending before the Immigration Court pursuant to INA § 240, and Petitioner is scheduled for a master calendar hearing on September 18, 2026.

163. Because the November 28, 2000 removal order has been rescinded, Respondents may no longer justify Petitioner's present detention as detention for the purpose of executing that final removal order.

164. Petitioner's present detention must instead rest upon lawful statutory authority applicable to a noncitizen whose removal proceedings are presently pending before the Immigration Court.

165. Petitioner contends that his present detention is governed by the discretionary detention framework of 8 U.S.C. § 1226(a) because he is presently in pending removal proceedings and is not subject to a final order of removal.

166. Section 1226(a) authorizes the arrest and detention of a noncitizen "pending a decision on whether the alien is to be removed from the United States" and expressly contemplates release on bond or conditional parole.

167. Petitioner is presently awaiting precisely such a decision. His prior removal order has been rescinded, his proceedings have been reopened, and the Immigration Court must now adjudicate whether Petitioner is removable and what relief, if any, is available to him.

168. Petitioner is not subject to mandatory detention under 8 U.S.C. § 1226(c) based upon any alleged criminal offense identified in this Petition.

169. Respondents therefore may not continue to treat Petitioner's detention as though he remained subject to the rescinded November 28, 2000 final removal order or otherwise deny him the individualized custody protections applicable to his present statutory posture.

170. To the extent Respondents continue Petitioner's physical confinement without applying the detention authority and custody procedures governing his reopened removal proceedings, that detention exceeds the authority conferred by the INA and is contrary to law.

171. Because Petitioner's continued detention is not being administered in accordance with the statutory framework governing his present immigration proceedings, habeas relief under 28 U.S.C. § 2241 is warranted.

**COUNT FOUR**

**Violation of the Administrative Procedure Act**

172. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

173. This Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. §§ 702, 704, and 706.

174. Respondents continue to detain Petitioner notwithstanding the September 14, 2026 order granting reopening and rescinding the November 28, 2000 in absentia removal order.

175. The Immigration Judge's September 14, 2026 ruling materially changed Petitioner's procedural posture. Petitioner is no longer subject to the November 28, 2000 in absentia removal order and instead has active removal proceedings pending before the Immigration Court.

176. Agency action may be set aside when it is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, or in excess of statutory authority. 5 U.S.C. § 706(2)(A), (C).

177. Respondents' continued detention of Petitioner without adequately accounting for the rescission of the final removal order and Petitioner's resulting present custody posture is contrary to law and arbitrary and capricious.

178. Respondents' continued custody also fails to account for highly relevant individualized circumstances, including:

a. Petitioner's voluntary compliance with the Government's June 2026 instruction to appear;

b. Petitioner's more than three decades of residence in the United States;

c. Petitioner's longstanding fixed residence in Long Beach;

d. Petitioner's stable employment and substantial family and community ties;

e. the September 14, 2026 rescission of the in absentia removal order; and

f. Petitioner's active reopened removal proceedings and September 18, 2026 master calendar hearing.

179. Petitioner's voluntary appearance is particularly significant. ICE obtained physical custody

of Petitioner because he complied with the Government's instruction to appear, not because ICE located him after he absconded, failed to report, or attempted to conceal himself.

180. Continued detention without a reasoned determination addressing Petitioner's materially changed procedural posture and individualized circumstances constitutes arbitrary and capricious agency action.

181. To the extent Respondents continue Petitioner's detention under statutory authority applicable to a final order that has now been rescinded, such action is contrary to law and in excess of statutory authority.

182. Petitioner has suffered and continues to suffer a concrete deprivation of physical liberty as a direct result of Respondents' continued custody.

183. Accordingly, Petitioner requests that the Court set aside unlawful agency action pursuant to 5 U.S.C. § 706 and order appropriate relief, including Petitioner's immediate release from physical custody.

## PRAYER FOR RELIEF

Wherefore, Petitioner requests this Court to grant the following:

1. Assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241;

2. Enjoin Respondents from transferring Petitioner outside the jurisdiction of this Court during the pendency of these proceedings absent prior authorization from this Court;

3. Declare that Respondents' continued detention of Petitioner, following the Immigration Judge's September 14, 2026 order granting reopening and rescinding the November 28, 2000 in absentia removal order, violates the Fifth Amendment, the Immigration and Nationality Act, and, to the extent applicable, the Administrative Procedure Act;

4. Declare that Respondents may not continue to detain Petitioner pursuant to a final-order custody posture predicated upon the November 28, 2000 in absentia removal order because that order has been rescinded and Petitioner's removal proceedings have been reopened;

5. Vacate and set aside any unlawful custody determination or agency action maintaining

Petitioner's detention that is contrary to law, arbitrary and capricious, or in excess of statutory authority, pursuant to 5 U.S.C. § 706;

6. Order Petitioner's immediate release from ICE custody, subject to reasonable conditions of supervision if the Court deems such conditions appropriate;

7. Enjoin Respondents from continuing to detain Petitioner without lawful statutory authority and constitutionally adequate individualized process;

8. Enjoin Respondents from re-detaining Petitioner following his release based upon the same circumstances, absent materially changed circumstances and constitutionally adequate process;

9. Award Petitioner reasonable attorneys' fees, costs, and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, to the extent permitted by law;

10. Retain jurisdiction to enforce any order entered in this matter; and

11. Grant such other and further relief as this Court deems just, proper, and equitable.

Respectfully,

/s/ *Gurpreet Kaur*
Gurpreet Kaur, Esq.
Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am counsel for Petitioner, and I submit this verification on his behalf. Because Petitioner is detained at the Adelanto Detention Center and immediate relief is sought, counsel verifies this petition on his behalf pursuant to 28 U.S.C. § 2242. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 15th day of September, 2026.

/s/ *Gurpreet Kaur*
Gurpreet Kaur, Esq.